UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

                    Plaintiff,
                                        DOCKET NO. 1:09-cr-164
vs.

DERICK OLIN McCONNON,

                    Defendant.
_____/


TRANSCRIPT OF PLEA HEARING

BEFORE THE HONORABLE ROBERT J. JONKER

UNITED STATES DISTRICT JUDGE

GRAND RAPIDS, MICHIGAN

December 22, 2009


Court Reporter:          Glenda Trexler
                         Official Court Reporter
                         United States District Court
                         685 Federal Building
                         110 Michigan Street, N.W.
                         Grand Rapids, Michigan 49503

Proceedings reported by stenotype, transcript produced by

computer-aided transcription.

1    A P P E A R A N C E S:

2    FOR THE GOVERNMENT:

3         MR. CHRISTOPHER M. O'CONNOR
          UNITED STATES ATTORNEY'S OFFICE
4         WESTERN DISTRICT OF MICHIGAN
          P.O. Box 208
5         Grand Rapids, Michigan 49501-0208
          Phone:  (616) 456-2404
6         Email:  Christopher.m.o'connor@usdoj.gov

7    FOR THE DEFENDANT:

8         MR. JEFFREY J. O'HARA
          303 Waters Building
9         161 Ottawa Avenue, N.W.
          Grand Rapids, Michigan 49503
10        Phone:  (616) 235-2000
          Email:  Joharalaw@sbcglobal.net

11                         *   *   *   *   *

12

13                              Grand Rapids, Michigan

14                              December 22, 2009

15                              11:08 a.m.

16                  P R O C E E D I N G S

17        THE COURT:  We're here in the case of the

18   United States against Derick McConnon, 1:09-cr-164.  We have an

19   anticipated change of plea today.

20        Let's start with appearances, please.

21        MR. O'CONNOR:  Good morning, Your Honor,

22   Chris O'Connor on behalf of the United States appearing on

23   behalf of Mark Courtade.

24        THE COURT:  All right.  Thank you.

25        MR. O'HARA:  Good morning, Your Honor, Jeff O'Hara

1    appearing with Mr. McConnon for a change-of-plea hearing.

2         THE COURT:  All right.  My notes indicate we're

3    anticipating a change of plea to Count 3, the conspiracy

4    charge, is that it?

5         MR. O'HARA:  Correct, Your Honor.

6         THE COURT:  Okay.  Before we get started, just -- I

7    don't want to put the cart before the horse, but in terms of

8    reviewing the stipulations in the plea agreement and then in

9    the last, I think, two or three pleas we've had in conspiracy

10   claims we've gotten around to factual basis and had some issues

11   with the factual basis on agreement.  Not -- I mean, they are

12   not necessarily for reasons that are framed here, but I guess

13   what I'm concerned about is I read 4 -- and I know we haven't

14   gotten to factual basis yet and it may all become clear, and

15   it's consistent with somebody who was a long-term distributor

16   but on sort of rolling transactions, if you will.  You know,

17   had a regular series of buys and then a regular series of

18   sells.  Are we going to have, though -- from counsel's

19   perspective are you comfortable there's factual basis

20   anticipated for a genuine agreement with at least one other

21   person that would be a conspiracy here to distribute?

22        MR. O'HARA:  I expect --

23        THE COURT:  I --

24        MR. O'HARA:  I expect that, Your Honor.

25        THE COURT:  You do?

1          *MR. O'HARA:*  Yes.

2          *THE COURT:*  Okay.  Fair enough.  Then let's get

3    started.

4          All right.  Then we can get started if you want to

5    come forward.  I'm sorry.

6          *MR. O'HARA:*  Thank you, Your Honor.

7          *THE COURT:*  Okay.  Mr. McConnon, I'm sure you've had

8    a chance to talk to your lawyer about this process, but I'm

9    going to be interested in basically three things today, and the

10   first is to make sure you're in a proper frame of mind here to

11   make decisions that will involve giving up important rights

12   that you have.  I need to make sure you're competent to make

13   those choices today.

14         Second, if you do want to go ahead with a guilty

15   plea, I want to make sure that you do it with your eyes open,

16   that you understand the rights you have and that you're giving

17   those rights up today, and that you understand the penalty

18   ranges that you open yourself to with a guilty plea.  And I

19   need to make sure you do that, if that's where you go today,

20   only because you think it's best for you under the

21   circumstances and not because anybody is trying to pressure you

22   into this against your will.

23         And then finally, if we do get through those stages,

24   I'll only accept a plea of guilty from you if I'm also

25   satisfied based on what you tell me that there's a factual

1    basis to support the charge and, therefore, your guilty plea as

2    well.  That is, to believe you are guilty of what the

3    government is charging you with.  So those are the inquiries

4    that I have this morning.

5          I'm going to have questions for you.  Your answers

6    will have to be under oath subject to penalty of perjury just

7    like any other witness in court here.  And that's the way we'll

8    proceed.

9          Do you have any questions about that before we start?

10        *THE DEFENDANT:*  No, Your Honor.

11        *THE COURT:*  All right.  We'll have you sworn, then,

12    to begin.

13        *THE CLERK:*  Would you raise your right hand, please.

14                DERICK OLIN MCCONNON

15              *(The oath was administered)*

16        *THE DEFENDANT:*  Yes, ma'am.

17        *THE COURT:*  All right.  Mr. McConnon, how old are

18    you?

19        *THE DEFENDANT:*  Twenty-nine.

20        *THE COURT:*  All right.  And how far did you go in

21    school?

22        *THE DEFENDANT:*  Some college.

23        *THE COURT:*  Okay.  And where did you graduate from

24    high school?

25        *THE DEFENDANT:*  Caledonia.  I got my GED.

1          *THE COURT:*  Okay.  Caledonia.  When did you leave
2     high school?  Or what grade?
3          *THE DEFENDANT:*  Tenth grade.
4          *THE COURT:*  Okay.  And then you got your GED.  And
5     where did you take college courses?
6          *THE DEFENDANT:*  Grand Rapids Community College.
7          *THE COURT:*  Okay.  I can tell already from our
8     exchange you have no difficulty understanding or speaking
9     English.  Any difficulty reading or writing the English
10    language?
11         *THE DEFENDANT:*  No, sir.
12         *THE COURT:*  All right.  In a case like this -- let's
13    see, Mr. O'Hara, are you retained or appointed in this case?
14         *MR. O'HARA:*  Appointed, Your Honor.
15         *THE COURT:*  Mr. O'Hara has been appointed to be your
16    lawyer, paid for by the government.  Has he been available to
17    you to talk to you about this case?
18         *THE DEFENDANT:*  Yes, Your Honor.
19         *THE COURT:*  Were you able to ask him all the
20    questions you had about this case?
21         *THE DEFENDANT:*  Yes.
22         *THE COURT:*  Did the two of you discuss your options
23    and different things you might do here in responding to the
24    government's charges?
25         *THE DEFENDANT:*  Yes.

1          *THE COURT:*  And do you feel like you need any more

2     time with Mr. O'Hara to talk about your position or your

3     choices?

4          *THE DEFENDANT:*  No, Your Honor.

5          *THE COURT:*  Do you feel ready to proceed today?

6          *THE DEFENDANT:*  Yes.

7          *THE COURT:*  Do you take prescription medication of

8     any kind?

9          *THE DEFENDANT:*  No, sir.

10         *THE COURT:*  Do you feel like you have any medical

11    condition or any mental health condition that should be treated

12    that is not being treated right now?

13         *THE DEFENDANT:*  No.

14         *THE COURT:*  Okay.  Anything at all that's interfering

15    with your ability to think or reason or make choices today?

16         *THE DEFENDANT:*  No, sir.

17         *THE COURT:*  Mr. O'Hara, in your experience anything

18    that would lead you to doubt or question your client's

19    competence?

20         *MR. O'HARA:*  No, Your Honor.

21         *THE COURT:*  Mr. O'Connor, I know you're pinch hitting

22    today, but if you have any experience or reason to doubt, I'd

23    like to hear about it now.

24         *MR. O'CONNOR:*  No, Your Honor.

25         *THE COURT:*  I'm fully satisfied based on my

1   interactions with Mr. McConnon this morning that he's competent

2   to make these choices, he's alert, he's oriented, he's focused

3   on this time and place, and I see nothing at all interfering

4   with his ability to make judgments today and to make choices.

5   So we can go on and look at the Indictment, that is the set of

6   charges the government is making against you, Mr. McConnon.

7   And I really want to focus on Count 3 which is the conspiracy

8   charge, because that's the intended count for the change of

9   plea today.  So I'll pass by Counts 1 and 2.

10          Count 3 charges you with conspiracy to distribute

11   cocaine.  In the absence of a guilty plea to this charge, the

12   government would have to prove it at trial before you could be

13   convicted and subjected to the penalties that are associated

14   with it, and I want to make sure you understand what the

15   government would have to prove to a jury before there could be

16   a conviction on this charge.

17          Now, the essence of every conspiracy charge is an

18   agreement.  And you already heard me address that general issue

19   with the lawyers before we started.  So in order for there to

20   be a conviction on this charge, there would have to be proof by

21   the government of an agreement between you and at least one

22   other person.  The agreement wouldn't have to be written down

23   or formal, it could be informal, but there would still have to

24   be an agreement.

25          The agreement here would have to be unlawful in some

1    way.  That's the second element.  And the government says the

2    agreement was unlawful because it involved the distribution of

3    cocaine and the agreement to possess with the intent to

4    distribute cocaine.  So both elements are there.

5         And then finally the government would have to prove

6    quantity involved, and they'd have to prove here that your

7    agreement involved the anticipated distribution of at least

8    500 grams of cocaine.

9         And then lastly they'd have to show that you got into

10   this conspiracy or this illicit agreement knowing what you were

11   doing.  You knew what the agreement was, yet you entered into

12   it knowing what it was and intending to pursue whatever the

13   common plan was for the distribution and possession with the

14   intent to distribute cocaine.

15        That's basically what the government would have to

16   show.

17        Do you have any questions at all about that?

18        *THE DEFENDANT:*  No, Your Honor.

19        *THE COURT:*  All right.  Now, if you're convicted of

20   this offense, either because you go to jury trial, which is

21   your absolute right to do, and lose there, or because you go

22   ahead with a guilty plea today, either way there will be a

23   conviction and you'll be exposing yourself to potential

24   penalties as a result.

25        The penalties for conviction of Count 3 include

1   imprisonment, supervised release, and some economic penalties.

2   Imprisonment requires at least five years in prison.  And the

3   maximum penalty range for a conviction here at these quantities

4   is 40 years.  So the penalty range, first of all, is 5 to 40

5   years in prison.

6           Questions about that?

7           THE DEFENDANT:  No, sir.

8           THE COURT:  All right.  Supervised release is also

9   mandated here of at least four years following imprisonment all

10  the way up to life on supervised release.

11          Any questions about that?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Supervised release means in general

14  you're in the community, not in prison, but you have specific

15  restrictions on your conduct.  So there will be things that you

16  have to do that other citizens don't have to do.  There will be

17  things you're not allowed to do that other citizens are allowed

18  to do.  And the importance of that supervised release period is

19  that during the period if you break those conditions of

20  release, you could be returned here, sent back to prison, not

21  because you commit a new crime but simply because you violate

22  those terms of release.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  The economic penalty ranges here

1    include a $100 special assessment that the Court will simply

2    include in the judgment and then a fine of anywhere from zero

3    to up to $2 million.  So those are the economic penalties.

4          Questions about any of that?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  All right.  Mr. O'Hara, does your client

7    have any issues regarding potential state parole or probation

8    revocations?

9          MR. O'HARA:  No, Your Honor.

10         THE COURT:  Okay.  The penalty range is an important

11   place to begin.  It's also important to understand the

12   practicalities of how the Court approaches sentencing in

13   federal court.  So where within a range of 5 to 40 years in

14   this case is the appropriate sentence.  And that begins a

15   discussion, or needs to begin anyway, with a discussion of

16   sentencing guidelines.

17         Have you and Mr. O'Hara talked about the Federal

18   Sentencing Guidelines?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Okay.  Those guidelines are an effort to

21   promote some uniformity in sentencing.  The way they work is to

22   have all of the conduct associated with a particular offense

23   reduced to one number called level of offense, and all of your

24   criminal history background, if there is any, reduced to

25   another number or a criminal history category, and where those

1    two numbers intersect on a chart you have something called the

2    guideline sentencing range in terms of months of imprisonment.

3              Have you and Mr. O'Hara looked through that together?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Okay.  Now, where you are on that range

6    depends on a variety of circumstances.  And have you and

7    Mr. O'Hara talked about the kinds of factors that would move

8    your sentencing range up on the guidelines and move it down on

9    the guidelines?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Okay.  Do you feel like you have an

12   understanding of how those factors play into your case?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Is there any prospect here of an

15   enhancement such as career offender enhancement coming into

16   play, or is that not in the cards here?

17             MR. O'HARA:  No, Your Honor.  There would be a

18   potential enhancement for a drug supplement had we gone to

19   trial --

20             THE COURT:  All right.

21             MR. O'HARA:  -- but not a career offender.

22             THE COURT:  All right.  Mr. McConnon, the other thing

23   I want to emphasize about the sentencing guidelines is that no

24   matter where they come out, ultimately they are advisory to the

25   Court, meaning that that's where the Court will begin the

1    sentencing process, but the Court is free to sentence you

2    within those guidelines, above the guidelines, or below the

3    guidelines as long as the Court honors that statutory range of

4    5 to 40 years.

5              Do you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Okay.  Has anybody tried to guarantee you

8    what sentence the Court would impose here on conviction?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  You understand there isn't any guarantee

11   other than it will be between that statutory range or within

12   it, the 5 to 40 years?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Okay.  Now, I mentioned earlier that I

15   want to make sure you're in the right frame of mind to make

16   choices today, because part of pleading guilty involves giving

17   up rights that you have, and I really want to turn to that for

18   a moment.

19             Right now in the eyes of the law you are entitled to

20   stand on the presumption of innocence.  That means that in the

21   eyes of the law right now, like any other person accused of a

22   crime, you are innocent of the charges the government is making

23   against you, and you stay that way in the eyes of the law until

24   one of two things happens.  Either you remove the presumption

25   yourself by pleading guilty today in a way that I accept, or

1    the only other way for the presumption to go away is to go to

2    trial and have the government prove its case to the jury's

3    satisfaction.

4          Now, if you go ahead with a guilty plea, we won't go

5    ahead with a jury trial.  And so I want to detail for you the

6    rights that you have going down that jury trial road, because

7    those are the rights you'll be giving up.

8          Any questions about that before we go on?

9          *THE DEFENDANT:*  No, sir.

10         *THE COURT:*  All right.  If you decide today to stick

11   with a plea of not guilty, and that is your absolute right --

12   even though you've signed a plea agreement, you can change your

13   mind, you don't have to go ahead with that today -- if you go

14   with the existing plea of not guilty, we'll convene here on

15   whatever trial date we have scheduled.  I don't know when that

16   is, but I know it's on the calendar.  We'll pick a jury of 12

17   people from the community, and those 12 people will hear and

18   decide your case.

19         At that trial only the government will have a burden

20   of proof.  You will not.  The government's burden will be to

21   prove to that jury beyond a reasonable doubt each and every

22   element of the crimes that it's charged you with, if it can do

23   so.  Ultimately all 12 people on the jury will have to be

24   convinced that the government has carried its burden of proof

25   before you could be convicted and subjected to the penalties we

1    talked about.

2            Now, to carry that burden of proof beyond a

3    reasonable doubt the government would have to bring here into

4    court all of the witnesses it has against you.  Those people

5    would have to testify in your presence where you would see them

6    and hear them, where your lawyer would have the chance to

7    cross-examine them, and most importantly where the jury would

8    see and hear the people and decide who to believe and how much

9    of what anybody says to believe or disbelieve.

10           Any other evidence the government has against you

11   would have to come here into open court where you would see it,

12   where the jury would see it and test it and decide whether to

13   credit the government with carrying its burden of proof or not.

14           You would not have a burden in that case.  You could

15   come in and say nothing.  You could be silent and say nothing

16   at all throughout the entire trial, and in that case it would

17   be your right to have me instruct the jury that it cannot in

18   any way use your silence against you in deciding whether the

19   government has carried its burden of proof.  You wouldn't have

20   to remain silent.  You could choose to put on an active

21   defense.  You could even choose to testify on your own behalf.

22   You could use the power of this Court to compel the presence of

23   other witnesses, to compel the production of other evidence

24   here in court that you believe would help establish any defense

25   you have to these charges.  All of those rights regarding the

1    trial you'd be giving up if you go ahead with a guilty plea

2    today.

3            You understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Okay.  One right you won't give up today

6    no matter what you decide is your right to counsel.  Mr. O'Hara

7    has been appointed for you, and he'll stay with you in the

8    trial court regardless of what you do.  So if you decide you

9    want to go to trial, you won't go alone, you'll go with

10   Mr. O'Hara as your counsel, he'll be there throughout the trial

11   helping you make the decisions you have to make and generally

12   representing your interests.

13           On the other hand, if you plead guilty today, there

14   will be a conviction based on your plea of guilty today

15   followed by a sentencing hearing sometime next year, and

16   Mr. O'Hara will be with you throughout that process.  So you'll

17   stay with him as long as you're in the trial court.

18           Do you understand that?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Okay.

21           Any questions at all about the rights you have at

22   this point and the rights you'd be giving up in this process?

23           THE DEFENDANT:  No, Your Honor.

24           THE COURT:  Let me cover one more thing that I think

25   is important to touch on, because in the process of pleading

1    guilty, in addition to these rights you're giving up, you also

2    give up the rights you would otherwise have to challenge the

3    investigative tactics of the government.  So if you think, for

4    example, that the government has violated your rights in the

5    way it has conducted searches in the case or if you think the

6    government has violated your rights in the way it's questioned

7    you, those kinds of defenses would have to be raised before a

8    plea today or they are waived.  Once you plead guilty they are

9    gone, you can't bring them up again later.  You can't bring

10   them up in the Court of Appeals.  You can't bring them up here.

11              Do you understand that?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Okay.  Let me look with you at the

14   Plea Agreement.  I mentioned that a moment ago, and I did see a

15   Plea Agreement filed in the case.

16              Do you have a copy of that in front of you?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  All right.  The copy I have, turning to

19   page 11, appears to have your signature near the top,

20   "Derick McConnon," dated December 16, 2009.

21              Is that your signature there?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  And did you sign that on December 16?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Before you signed did you read those

1    sentences above your name that begin "I've read this agreement
2    and carefully discussed every part of it with my attorney"?
3              THE DEFENDANT:  Yes, Your Honor.
4              THE COURT:  And were all those sentences true when
5    you signed on December 16?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Any second thoughts in the last roughly
8    week?
9              THE DEFENDANT:  No, Your Honor.
10             THE COURT:  Do you still want to go ahead with this?
11             THE DEFENDANT:  Yes, sir.
12             THE COURT:  Okay.  Let me go to the beginning of the
13    agreement with you and walk through the basic provisions.  Much
14    of this we've covered, but there will be some new items.
15             Paragraph 1 says you're going to plead guilty to
16    Count 3 of the Indictment, which we've looked at.
17             And paragraph 2 says you understand what the elements
18    of that charge are.  And I think we've covered that.
19             Paragraph 3 details the penalty ranges that apply
20    upon conviction.
21             Questions about any of those paragraphs?
22             THE DEFENDANT:  No, sir.
23             THE COURT:  I want to pass by paragraph 4 for a
24    moment.  We'll come back to that on factual basis.
25             Paragraph 5 is new, and it says that as part of this

1    plea agreement you are agreeing to cooperate with law

2    enforcement.  And the basic idea of paragraph 5 is that you're

3    going to tell law enforcement what you know about possible

4    criminal wrongdoing that you've been a part of or that you've

5    seen other people be a part of and generally assist in their

6    efforts to enforce the law.

7            Your cooperation could include grand jury appearances

8    where you'd testify to a grand jury considering whether to

9    bring charges against other people.  It could include

10   testifying in a trial proceeding against somebody who is

11   exercising their right to go to trial on charges the government

12   has already brought.  And it could even include submitting to a

13   lie-detector test if the government thinks that that's

14   warranted in the case.

15           The basic idea of paragraph 5 is you're going to

16   cooperate with law enforcement.

17           Questions about that?

18           *THE DEFENDANT:*  No, Your Honor.

19           *THE COURT:*  Paragraph 6 is connected here, and it

20   says if you fully cooperate, as you promised to do in

21   paragraph 5, that's one thing, and if the government believes

22   in good faith that your cooperation has provided actual

23   substantial assistance, that's the second thing, and both have

24   to be true for paragraph 6 to come into play, but if both are

25   true, the government may then come to this Court with a motion

1    asking the Court to impose a lower sentence than the Court

2    would otherwise impose to give you credit or recognition for

3    the substantial assistance you actually provide.

4              Questions about paragraph 6?

5              *THE DEFENDANT:*  No, Your Honor.

6              *THE COURT:*  You understand that the government's not

7    promising it will file that motion here, only that it will

8    evaluate your cooperation and decide in good faith if it

9    actually and substantially assists the government; that's what

10   they are committing to do.

11             You recognize that?

12             *THE DEFENDANT:*  Yes, sir.

13             *THE COURT:*  Okay.  Now, if they do reach that

14   conclusion and file the motion, do you also recognize that it's

15   still up to the Court ultimately whether to grant the motion,

16   and if so how much credit to give you for that assistance?

17             *THE DEFENDANT:*  Yes, Your Honor.

18             *THE COURT:*  All right.  Let's go to paragraph 7 which

19   is a series of promises the government is making to you as part

20   of the plea agreement here.

21             The first one is that at the time of sentencing the

22   government will move to dismiss the two other counts in the

23   Indictment we didn't look at and will not bring further charges

24   that arise out of the conspiracy that's charged in Count 3.

25             Questions about that?

1          *THE DEFENDANT:*  No, sir.

2          *THE COURT:*  All right.  The next one your counsel has

3     already alluded to, and it says the government will not file a

4     supplemental information in the case which would have the

5     effect of essentially doubling your penalty exposure on the

6     mandatory minimum side.  So if the government would go ahead

7     and file a supplemental information that you have a prior

8     drug -- felony drug conviction that qualifies, your penalty

9     range would go up.  You've talked to Mr. O'Hara about that?

10          *THE DEFENDANT:*  Yes, Your Honor.

11          *THE COURT:*  Okay.  And you recognize that one of the

12    benefits the government is giving you here is their promise not

13    to do that so that the penalty range that applies is the one we

14    talked about, minimum five years to maximum 40?

15          *THE DEFENDANT:*  Yes, sir.

16          *THE COURT:*  Okay.  The next one says the government

17    will not use what you tell the government in your proffer

18    sessions as part of your cooperation, it will not use that

19    information against you to make the sentencing exposure worse

20    than it would otherwise be.  Meaning the government wants to

21    have you with full incentive to tell them everything you know

22    about possible criminal wrongdoing, not fearing that they will

23    then turn around and seek a higher sentence for you because

24    they didn't know about all the stuff you're telling them.

25          Do you recognize how that works, and do you have any

 1    questions about it?

 2                THE DEFENDANT:  No, sir.

 3                THE COURT:  No questions?

 4                THE DEFENDANT:  No questions.  I recognize how it

 5    works.

 6                THE COURT:  Paragraph D is a sentencing guideline

 7    issue, and it says that the government will not stand in the

 8    way of your ability and your effort to get the maximum possible

 9    benefit you can receive under the sentencing guidelines for

10    timely acceptance of responsibility here.  In your case that

11    would likely be three points of credit reducing your level of

12    offense.

13                Questions about that?

14                THE DEFENDANT:  No, Your Honor.

15                THE COURT:  All right.  And then the last one says

16    that the government is not going to bring charges against a

17    person, Candice May Vogl, for alleged roles in this conspiracy

18    they have charged you with provided that she provides full and

19    truthful cooperation in the investigation of anything that she

20    was involved in from a criminal point of view.

21                Questions about that?

22                THE DEFENDANT:  No, sir.

23                THE COURT:  All right.  Now, is Candice Vogl

24    connected to you in some way?

25                THE DEFENDANT:  Yes, my fiancee, Your Honor.

1          *THE COURT:*  Okay.  And you recognize that this is one

2     of those things where the government is making a commitment to

3     you, but ultimately there's something in the hands of

4     Candice Vogl, namely, she has to provide that full and truthful

5     cooperation, and if she doesn't, the government may still

6     choose to charge her.

7               Do you recognize that?

8          *THE DEFENDANT:*  Yes, Your Honor.

9          *THE COURT:*  And you can't control how she behaves in

10    the process.

11         *THE DEFENDANT:*  No, Your Honor.

12         *THE COURT:*  Okay.  All right.  Paragraph 8 indicates

13    the sentencing guidelines apply here and describes how they

14    work in a general way.  I think we've talked about that.

15              Do you have any questions about that?

16         *THE DEFENDANT:*  No, sir.

17         *THE COURT:*  All right.  Paragraph 9 indicates that

18    there's no agreement about the final guideline range.  That is,

19    the government isn't agreeing with you and your counsel that

20    any particular guideline range is applying here.  They have

21    simply agreed with you on a couple of factors that will begin

22    the process, but the final guideline range is going to be open

23    for argument at sentencing.

24              Do you understand that?

25         *THE DEFENDANT:*  Yes, sir.

1          *THE COURT:*  Okay.  Paragraph 10 lists constitutional

2     rights that you're waiving in the process of pleading guilty,

3     and I think we've covered all those.

4          Any questions about that?

5          *THE DEFENDANT:*  No, sir.

6          *THE COURT:*  Paragraph 11 is new.  It's a waiver of

7     appeal and collateral attack, and it says as part of the

8     exchange of benefits here from you to the government and the

9     government to you, you're going to waive appeal and collateral

10    attack rights that you would otherwise have.  So I want to go

11    through this.

12          I think basically you need to think of this paragraph

13    as waiving the appeal rights and collateral attack rights you

14    would otherwise have, that is having to live with the judgment

15    of this Court with only a couple of exceptions that I'm going

16    to point out.  Okay?  Questions about that general statement

17    first before we look at the exceptions?

18          *THE DEFENDANT:*  No, Your Honor.

19          *THE COURT:*  Okay.  The first exception is that the

20    sentence of the Court ultimately has to be within or below the

21    guideline range or the statutory mandatory minimum, whichever

22    is greater, for this waiver to trigger.

23          So in other words, if the Court sentences you above

24    the statutory mandatory minimum or whatever the guideline range

25    is, if it's higher than that, then you still have the right to

1    appeal.  So let's take an example.  Let's say that the

2    guideline range here turns out to be 72 to 84 months, purely

3    hypothetical, I have no idea if that's even a guideline range.

4    You have the statutory mandatory minimum of 60 months; you have

5    a guideline range of 72 to 84 months.  So my reading of this is

6    if the Court sentences you in that case above 84 months, the

7    high end of the guideline range, you'd still have your right to

8    appeal and collateral attack.  If I sentence you anywhere below

9    84 months or 84 months or below, you don't have a right to

10   appeal or attack that judgment.

11           Questions about that?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Okay.  Counsel, you agree that's the

14   intended reading of the first exception or the first trigger?

15           MR. O'CONNOR:  Yes, Your Honor.

16           MR. O'HARA:  It is, Your Honor.

17           THE COURT:  Okay.  The only other exception here

18   noted is that if you and your lawyer object at the time of

19   sentencing to preserve an objection to the way the Court is

20   calculating the guidelines, you have a right to appeal that.

21   So, for example, using that same hypothetical, if Mr. O'Hara

22   says, Judge, I think your guideline calculation is wrong, it's

23   not really 72 to 84 months, it's really, you know, 48 to

24   60 months because you've credited too much quantity to my

25   client and you've given him a role in the offense that's too

1    high, any other -- oh, and you've treated him as having a

2    weapon when he didn't. Okay, now he's just made three

3    objections. I overrule those objections; you have a chance to

4    appeal them. Okay? So that's an opportunity you have to bring

5    to the Court of Appeals as well.

6            Questions about how that works?

7            THE DEFENDANT: No, Your Honor.

8            THE COURT: Okay. Other than those two examples,

9    though, those two triggers or exceptions, you're walking away

10   from your right to appeal or attack the judgment of the Court.

11           Questions about that?

12           THE DEFENDANT: No, sir.

13           THE COURT: All right. Paragraph 12 indicates that

14   the Court is not a party to this agreement, meaning that you've

15   signed it, your lawyer signed it, I saw that earlier, and then

16   Mr. Courtade signed it on behalf of the United States

17   Attorney's Office. The Court doesn't sign it. I'll review it

18   for reasonableness and decide whether to accept it at the time

19   of sentencing, but I'm not bound by it. Rather I'm bound to

20   make my own independent judgment about whether it's an

21   appropriate resolution of the case, first of all, and if so

22   what the appropriate sentence is for the count of conviction.

23           Questions about that?

24           THE DEFENDANT: No, Your Honor.

25           THE COURT: All right. Paragraph 13 says the

1   agreement is limited to the parties.  The added point here is

2   that Mr. Courtade and today Mr. O'Connor represent only one

3   office of the federal government, namely, the United States

4   Attorney's Office for the Western District of Michigan.  That

5   office has a geographical range:  Anything in the

6   Lower Peninsula of Michigan that's west of a line from the

7   bridge to the border and the Upper Peninsula of Michigan.

8   That's where the Western District of Michigan's office

9   operates.  So anything within that range in the federal

10  government's jurisdiction is covered here.  But anything out of

11  that is not.  So if you have a dispute with the United States

12  Attorney in Detroit, the Eastern District of Michigan, that's

13  not covered here.  With a United States attorney in

14  Indianapolis, not covered here.  With the Internal Revenue

15  Service in DC, not covered here.  It's just the United States

16  Attorney's Office for the Western District of Michigan.

17              Questions about that?

18              THE DEFENDANT:  No, sir.

19              THE COURT:  All right.  Paragraph 14 says what

20  happens if there's a breach of this agreement.  And it's

21  important to recognize the consequences of that.  Let's say you

22  decide not to go ahead with a guilty plea today, and the first

23  thing I want you to hear again is that is your absolute right.

24  You do not have to go ahead and plead guilty today even though

25  you signed this agreement.  But if you don't, it will breach

1   your promise.  It will be something other than what you

2   committed to do, and the consequences of that would be the

3   agreement would dissolve.  It would go away.  You would be

4   exposed to all three of the charges in the original indictment

5   as well as any other charges the government could bring against

6   you within the one-year period that's brought there or noted

7   there in the paragraph, and any other benefits you're getting

8   under the agreement would be gone.  So the government could

9   file that supplemental information tomorrow.

10          The government could pursue charges against the other

11  person.  The government would not be bound to give you any

12  consideration on the sentencing guideline issues that it's

13  promised, and you would be back in the position you were in

14  before you signed the agreement, headed to trial on those

15  charges.

16          Questions about any of that?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Okay.  The last paragraph here says this

19  is the complete agreement, meaning anything between you and the

20  government that's motivating a decision to plead guilty on your

21  part is written down here in this Plea Agreement that we've

22  just gone through.

23          Questions about that?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Has anybody from the government made any

1   promises or commitments to you other than what we've gone

2   through in this Plea Agreement to get you to plead guilty?

3          *THE DEFENDANT:*  No, sir.

4          *THE COURT:*  Has anybody at all made promises or

5   commitments to you to get you to plead guilty that we haven't

6   talked about?

7          *THE DEFENDANT:*  No, sir.

8          *THE COURT:*  Anybody putting pressure on you or

9   threatening you or coercing you in any way to get you to do

10  this against your will?

11         *THE DEFENDANT:*  No, Your Honor.

12         *THE COURT:*  Is this something you want to proceed

13  with based only on your own considered judgment?

14         *THE DEFENDANT:*  Yes, sir.

15         *THE COURT:*  Okay.  Mr. O'Hara, anything else you'd

16  like to address or have me address with the client, your client

17  at this point?

18         *MR. O'HARA:*  No, Your Honor.

19         *THE COURT:*  Mr. O'Connor, anything else?

20         *MR. O'CONNOR:*  No, Your Honor.

21         *THE COURT:*  All right.  Then my question for you,

22  Mr. McConnon, is how you plead today to Count 3 of this

23  Indictment, conspiracy to distribute cocaine, guilty or not

24  guilty?

25         *THE DEFENDANT:*  Guilty, Your Honor.

1          *THE COURT:*  And that is a decision you make of your

2    own free will today?

3          *THE DEFENDANT:*  Yes, sir.

4          *THE COURT:*  You recognize if I accept it, you're

5    going to be giving up all those rights we talked about,

6    including the right to stand on the presumption of innocence,

7    the right to insist on a jury trial.  All those things that go

8    along with it.

9          You recognize that?

10         *THE DEFENDANT:*  Yes, Your Honor.

11         *THE COURT:*  You recognize if I accept this, I'm

12   simply going to -- well, you will be convicted as of my

13   acceptance today, subject only then to the penalty phase of

14   this case.

15         Do you understand that?

16         *THE DEFENDANT:*  Yes, sir.

17         *THE COURT:*  Okay.  Nobody is pressuring you to do

18   this against your will?

19         *THE DEFENDANT:*  No, Your Honor.

20         *THE COURT:*  And you recognize that if you have any

21   claim that the government has prosecuted this case unfairly or

22   any claim that the police investigated it unfairly or

23   unconstitutionally, those claims are waived, you can't come

24   back to those later?

25         *THE DEFENDANT:*  Yes, sir.

1          THE COURT:  Okay.  I'm satisfied that Mr. McConnon is

2    making a knowing and intelligent waiver of his rights to

3    proceed here.  I believe he understands the risks he's taking

4    on, and I believe he's deciding to do this based only on what

5    he believes is best for him under the circumstances after

6    conferring with counsel.

7          I don't believe anybody is forcing him to do this

8    against his will, and I don't believe he's relying on anything

9    apart from the promises that are a part of the written

10   Plea Agreement with the government.

11         And so what that leaves for me is just one other set

12   of questions, Mr. McConnon, and that is to determine if there's

13   a factual basis to support the plea here.  And to begin that,

14   I'd like to turn back to the Plea Agreement in paragraph 4

15   which has a heading called "Stipulations" and then goes on for

16   several paragraphs about what happened in particular on

17   March 16, 2009, at the location mentioned there in

18   Gaines Township.

19         Have you read through everything in paragraph 4

20   carefully?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And is everything recited there in

23   paragraph 4 true to the best of your knowledge, information,

24   and belief?

25         THE DEFENDANT:  Yes, Your Honor.

1          *THE COURT:*  And you recognize that -- well, going

2     through and reading all of these out loud, by saying what you

3     just did, you're allowing me to rely on all of the factual

4     statements in there in determining a factual basis and in

5     beginning to think about what the appropriate sentence is?

6          *THE DEFENDANT:*  Yes, Your Honor.

7          *THE COURT:*  Okay.  I'd like to hear a little bit more

8     in your own words, Mr. McConnon.  You can certainly refer to

9     these stipulations and use them if you want, but what I want to

10    understand, in your own mind what makes you guilty of Count 3?

11    What facts support the idea that there was a conspiracy in

12    which you were involved to distribute cocaine in the quantities

13    mentioned?  Just talk to me about that in your own words.

14         *THE DEFENDANT:*  Well, Your Honor, from January to

15    March 16th I picked up cocaine from 36th Street in Byron Center

16    from a guy named G and his girlfriend Trina, and I distributed

17    it through the Kentwood area.

18              On March 16th my house was searched and two ounces of

19    cocaine were found, and at that point I admitted to the agents

20    where I had been getting it from and that I had been

21    distributing cocaine through the Kentwood and Grand Rapids

22    area.

23         *THE COURT:*  Okay.  So we're talking about January to

24    March of 2009?

25         *THE DEFENDANT:*  Yes, sir.

1          THE COURT:  Okay.  Now, you said you would get your

2   cocaine at 36th and Byron Road or was it Byron Center?

3          THE DEFENDANT:  Byron Center, sir.

4          THE COURT:  Okay.  From a person named G.  Was that

5   somebody you had a regular association and understanding with

6   about supplying cocaine?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Okay.  And what was it?  I mean, how

9   would you characterize it in your mind?  What was your

10   understanding with G?

11          THE DEFENDANT:  Just that I would purchase the

12   cocaine from him and then sell it through -- sell it to other

13   individuals.

14          THE COURT:  Okay.  Once you bought it from G, was it

15   yours to do with what you wanted, or did you and he have an

16   understanding about how you would split the proceeds?

17          THE DEFENDANT:  Um, basically I'd just give him the

18   money for half of it or if I owed him money on it.  We didn't

19   really split, split the money.  He just had a certain amount.

20   It was $900 per ounce that I paid for it.

21          THE COURT:  Okay.  Did he front you some of it, or

22   did you have to pay cash for delivery?

23          THE DEFENDANT:  He fronted it to me.

24          THE COURT:  So he would front some to you?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  And then obviously he expected you
2     to go out and sell it to make the money to pay it off.
3          THE DEFENDANT:  Yes, Your Honor.
4          THE COURT:  Okay.  And when you got the cocaine from
5     him, that was your plan as well, to go sell that cocaine?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  Okay.  Now, are you satisfied in your own
8     mind -- let me ask it this way:  Is there any question in your
9     mind that your understanding with G involved at least 500 grams
10    of cocaine?
11         THE DEFENDANT:  Yes, Your Honor.
12         THE COURT:  Okay.  I think I confused you because of
13    the way I questioned it.
14              Did your understanding with G involve at least
15    500 grams of cocaine in your mind?
16         THE DEFENDANT:  Yes, Your Honor.
17         THE COURT:  No question about that in your mind?
18         THE DEFENDANT:  No.
19         THE COURT:  Okay.  Did you have other sources of
20    supply too or was G your source?
21         THE DEFENDANT:  G was my source.
22         THE COURT:  Okay.  All right.  Mr. O'Connor, anything
23    else you'd like to probe on factual basis?
24         MR. O'CONNOR:  No, Your Honor.
25         THE COURT:  You're satisfied there is one here?

1          *MR. O'CONNOR:*  I am, Your Honor.

2          *THE COURT:*  Mr. O'Hara, anything else on factual

3    basis?

4          *MR. O'HARA:*  No, Your Honor.

5          *THE COURT:*  You're satisfied as well?

6          *MR. O'HARA:*  I am.

7          *THE COURT:*  I am too.  I think based on what

8    Mr. McConnon has indicated as well as the stipulations in the

9    Plea Agreement there is a factual basis to support the charge

10   and the guilty plea here of conspiracy to distribute cocaine in

11   the quantities indicated and the time and place indicated, and

12   so with that and the earlier findings of the Court, I will

13   accept your plea of guilty, Mr. McConnon, to Count 3, and it

14   means that as of this moment you're adjudicated guilty of that

15   count.  There won't be a trial on it or on the other two counts

16   of the Indictment.  Instead we'll schedule a sentencing date,

17   there will be a hearing on that date, and before we get there a

18   representative of the probation department will prepare a

19   written presentence report.  The report will go into greater

20   detail about the underlying offense.  It will go into detail

21   regarding your criminal history past and prepare a guideline

22   report and recommendation for me.

23          And before it comes to me, it will go through you and

24   your lawyer, and you'll both have a chance to review it

25   carefully, to make any objections to it that you think are

1   necessary, to make corrections or additions to it.   The

2   document will come to me then either as a report that everybody

3   agrees is accurate that I can use for purposes of sentencing or

4   as one that has specific objections framed that I'll then

5   decide at the time of sentencing.

6          Questions at all about that process?

7          *THE DEFENDANT:*  No, sir.

8          *THE COURT:*  All right.   Before we leave paragraph 4

9   completely, the last paragraph embedded there deals with a

10  couple of sentencing guideline issues that will be the

11  beginning of the process.

12         The first one is the quantity because that's a

13  beginning factor in the sentencing guideline range in a drug

14  offense like this, and it says the parties are agreeing the

15  relevant conduct for purposes of assessing that guideline issue

16  is at least 500 grams but less than two kilograms of cocaine.

17  So both the government and you are agreeing with that range as

18  a starting point.

19         Questions about that?

20         *THE DEFENDANT:*  No, Your Honor.

21         *THE COURT:*  Okay.   Now, the probation department will

22  do its own investigation.   They might agree or disagree with

23  that range, but the government's commitment as part of this

24  plea agreement is that the range will be within that 500-gram

25  to two-kilogram range of cocaine, and the Court will ultimately

1    decide if there's an issue.

2              Questions about that?

3              *THE DEFENDANT:*  No, sir.

4              *THE COURT:*  Okay.  The other is that the government

5    and you are agreeing that a firearm was not in your possession

6    in furtherance of this offense.

7              And third, that you were not a leader, supervisor, or

8    manager of others in this offense.

9              Questions about either of those?

10             *THE DEFENDANT:*  No, Your Honor.

11             *THE COURT:*  Okay.  Now, you recognize each one of

12   those three things we just talked about -- quantity,

13   leadership, and weapons -- are guideline sentencing factors?

14             *THE DEFENDANT:*  Yes, sir.

15             *THE COURT:*  Okay.  Do we have a sentencing date,

16   Ms. Ludge?

17             *THE CLERK:*  We do.  March 31, 2010, at 3 p.m.

18             *THE COURT:*  All right.  So that will be our

19   sentencing hearing date.  Between now and then the report will

20   be investigated and prepared, and then we'll get back to this

21   court on March 31.

22             Questions at all, Mr. McConnon, about where you stand

23   or what's left to do in this case?

24             *THE DEFENDANT:*  No, Your Honor.

25             *THE COURT:*  Okay.  Mr. O'Hara, anything else from the

1    defense?

2            *MR. O'HARA:*  No, Your Honor.

3            *THE COURT:*  Mr. O'Connor?

4            *MR. O'CONNOR:*  No, Your Honor.

5            *THE COURT:*  Okay.  Thank you.

6            *THE CLERK:*  All rise, please.  Court is adjourned.

7        *(Proceeding concluded at 11:50 a.m.)*

8                        *   *   *   *   *

9            I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   Date:  May 11, 2010

13

14                            **/s/ Glenda Trexler**

15                            Glenda Trexler, CSR-1436, RPR, CRR

16

17

18

19

20

21

22

23

24

25